STOKES WAGNER ALC
PETER B. MARETZ, SBN 144826
pmaretz@stokeswagner.com
JAMIE L. SANTOS, SBN 325564
jsantos@stokeswagner.com
600 West Broadway, Suite 910
San Diego, CA 92101
Telephone:   (619) 232-4261
Facsimile:   (619) 232-4840

STOKES WAGNER ALC
DIANA LERMA, SBN 258442
dlerma@stokeswagner.com
555 West 5th Street, 35th Floor
Los Angeles, CA 90013
Telephone:  (213) 618-4128
Facsimile:   (619) 232-4840

Attorneys for Plaintiff COLUMBIA
SUSSEX MANAGEMENT, LLC,
individually and on behalf of all other hotel
owners and managers operating hotels in
Santa Monica, California

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA SUSSEX MANAGEMENT, LLC, individually and on behalf of all other hotel owners and managers operating hotels in Santa Monica, California, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SANTA MONICA, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR DECLARATORY AND OTHER RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, COLUMBIA SUSSEX MANAGEMENT, LLC, a Kentucky limited liability company ("Columbia Sussex" or "Plaintiff") asserts the following claims, individually and on behalf of all other Santa Monica hotel owners and managers, against Defendant CITY OF SANTA MONICA ("Santa Monica" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.     On September 27, 2019, the City of Santa Monica City Council passed an ordinance (known as Santa Monica Municipal Code Chapter 4.67 and referred to herein as "the Ordinance") that, in pertinent part, will limit hotel employees cleaning guest or meeting rooms, regardless of title, from cleaning more than a specific square footage depending on hotel size during their scheduled shift.  More specifically, at hotels with fewer than 40 rooms, employees may not be required to clean more than 4,000 square feet of floor space, regardless of furniture, equipment, or amenities, in one eight-hour workday; at hotels with 40 or more rooms, employees may not be required to clean more than 3,500 square feet of floor space.

2.     Severe penalties apply if a room cleaner is assigned work over the square footage cap during his/her workday, and a hotel employer must then compensate the room cleaner at twice the employee's regular rate of pay *for all hours worked that day* – not just those hours worked on space beyond the applicable square footage cap.

3.     Further, while the square footage cap is a definitive requirement, the Ordinance improperly provides a waiver of that mandate at the sole discretion of the union collective bargaining representative for hotels that are unionized and have a collective bargaining agreement, leaving penalty enforcement of averred safety protections in the Ordinance to an entity for its potential economic advantage in future collective bargaining.  Non-union hotels are not capable of receiving such a waiver, further allowing for the potential economic gain of the hotel-dominant union that promoted the passage of the Ordinance in its present form, in direct violation of

2

the preemption provided by the National Labor Relations Act, 29 U.S.C. §§ 151-169.[1]

4.     As set forth in the following paragraphs, Plaintiff challenges a singular portion of the Ordinance – Chapter 4.67.030(a), hereinafter referred to as the "Chapter," along with its waiver provision – as Constitutionally improper, invalid, and preempted.

## **PARTIES**

5.     Plaintiff Columbia Sussex is a limited liability company that operates the JW Marriott Santa Monica Le Merigot (the "Le Merigot Hotel"), a hotel with 175 rooms and suites located within Santa Monica, California.

6.     The Le Merigot Hotel is a beach-adjacent resort hotel within the city limits of Santa Monica and is a "hotel," as defined in Santa Monica Municipal Code Chapter 4.67.010(k).  The Le Merigot Hotel will be subject to the restrictions and penalties in the Chapter when it goes into effect on January 1, 2020.  The Le Merigot Hotel has more than 40 guest rooms, and it is therefore subject to the 3,500 square foot "floor space" cleaning limitation on room attendants provided in the Chapter. The house keeping staff at the Le Merigot are employed by Columbia Sussex.

7.     As a result of broad national advertising and their location, most if not all of the putative class of Plaintiff hotels in Santa Monica (including the Le Merigot) host an overwhelming majority of their guests from outside of California.   For example, only 14% of the guests of the Le Merigot (and other Santa Monica hotels) are residents of the State of California, and the rest hail from out of state.

/ / /

---

[1] That preemption is generally referred to as *Machinists* preemption (named after the decision in *Int'l Ass'n of Machinists v. Wis Emp't Relations Comm'n*, 427 U.S. 132 (1976)).  Unlike the averred interference with labor management relations at issue in the case of *American Hotel and Lodging Association v. City of Los Angeles*, 834 F.3d 958 (9th Cir. 2016), the waiver permitted to undermine any health and safety obligations in the Ordinance is not a minimum wage standard that falls within the ambit of state power to delegate to a union.  It is instead a unilaterally controlled "weapon of self-help" prohibited by *Machinists* and so subject to preemption.

8.     Defendant Santa Monica is a political subdivision of the State of California, County of Los Angeles, and is located within this judicial district.

9.     Defendant Santa Monica (population was 89,736) is a beachfront city in western Los Angeles County situated on the Santa Monica Bay.  It is bordered on three sides by the city of Los Angeles.

10.     Due in part to its very agreeable climate, beautiful beaches, and popular entertainment venues, Defendant Santa Monica has become a famed resort town that has experienced a tourism boom in the last 40 years resulting from visits of largely out-of-state visitors that are served by its 41 hotels.

11.     The unnamed class of hotel owners and managers operate 40 of those hotels of varying size within the geographical boundaries of Santa Monica.

## JURISDICTION

12.     This Court has jurisdiction over the present controversy under the provisions of 28 U.S.C. § 1331, which provides for original jurisdiction over Plaintiff's claims arising under the laws of the United States and actions to secure equitable and other relief under the appropriate governing statutes.

13.     The Court further has jurisdiction pursuant to the provisions of 28 U.S.C. § 2201 since Plaintiffs are also seeking declaratory relief.

14.     This action also arises under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 and the United States and California Constitutions.

15.     Finally, the Court is permitted to hear Plaintiff's claims brought pursuant to the California Constitution in accordance with its supplemental jurisdiction over state law claims as per 28 U.S.C. § 1367(a).

## VENUE

16.     Venue is proper in this Court under 28 U.S.C. § 1391(a), because Santa Monica is located in this district, the events giving rise to Plaintiff's claims have occurred in this district, and the challenged Santa Monica ordinance is (and will be further) implemented in this district.

## INTRADISTRICT ASSIGNMENT

17.    Assignment to the Western Division of this District is proper, since the events or omissions which give rise to the claims herein occurred within the County of Los Angeles.

## FACTUAL ALLEGATIONS

### The Unlawful Aspects of the Ordinance

18.    On September 10, 2019, the Santa Monica City Council adopted Ordinance 2614, an Ordinance of the City Council of the City of Santa Monica amending the Santa Monica Municipal Code Chapter 4.67 with the stated purpose "to Enhance Protection of Hotel Workers in the Local Hospitality Industry." Santa Monica Ordinance 2614. (A copy of Santa Monica Ordinance 2614 is attached hereto as Exhibit 1.)

19.    The Ordinance is codified at Santa Monica Municipal Code Chapter 4.67, and will take effect as applicable here on January 1, 2020. *Id.* § 4.67.050.

20.    As is relevant here, Santa Monica Municipal Code Chapter 4.67.030, entitled "Measures to Provide Fair Compensation for Workload," provides in subdivision (a), entitled "Workload Limitation," that:

> For hotels with fewer than 40 guest rooms, a hotel employer shall not require a room attendant to clean rooms amounting to a total of more than 4,000 square feet of floor space in any eight-hour workday, unless the hotel employer pays the room attendant twice the room attendant's regular rate of pay for each and every hour worked during the workday. For hotels with 40 or more guest rooms, a hotel employer shall not require a room attendant to clean rooms amounting to a total of more than 3,500 square feet of floor space in any eight-hour workday, unless the hotel employer pays the room attendant twice the room attendant's regular rate of pay for each and every hour worked during the workday. If a room attendant is assigned to clean seven or more checkout or additional bed rooms during any eight-hour workday, each such checkout or additional bed room shall for purposes of this subsection count as 500 square feet, regardless of the actual square footage of each room. The limitations contained herein apply to any combination of spaces, including guest rooms, meeting rooms, and other rooms within the hotel, and apply regardless of the furniture, equipment, or amenities in such rooms

5

Santa Monica Municipal Code Chapter 4.67.030(a) (the Chapter).

21.     As defined in Santa Monica Ordinance 2614, and as relevant here:

(j)     "Guest room" means any room or suite of rooms intended to be used by a guest of a hotel for sleeping purposes.

(l)     "Hotel employer" means any person who owns, controls, or operates a hotel in the City, and includes any person or contractor who, in a managerial, supervisory, or confidential capacity, employs hotel workers to provide services at a hotel in conjunction with the hotel's purpose.

(q)     "Room attendant" means a hotel worker whose principal duties are to clean and put in order guest rooms in a hotel.

(t)     "Workday" means any consecutive 24-hour period commencing at the same time each calendar day.

Santa Monica Municipal Code Chapter 4.67.010.

22.     As set forth above, the Chapter belies the avowed purpose of the Ordinance to protect the health and safety of hotel workers since it does not limit how many rooms or how much floor space a room attendant can clean in a Santa Monica hotel in a given day, but rather imposes a penalty on hotels in the event that they require room attendants to clean more than 3,500 square feet of "floor space" (not clearly defined) in an eight-hour workday, mandating that such workers receive *twice* their regular rate of pay for the *entire* workday in the event they clean any amount of guest rooms greater than either 4,000 or 3,500 square feet of floor space arbitrarily depending on the size of the hotel.

23.     On information, knowledge, and reasonable belief, Plaintiff alleges that the passage of the Ordinance in general and the Chapter in specific was prompted by the union that is the predominant collective bargaining representative of union-based hotels in Santa Monica in a direct effort to: (a) force an increase in union membership (and a concomitant increase in dues paid) by forcing unionized hotels to hire additional room attendants to meet the demands of the square-footage-based work restrictions; and (b) use the unilateral waiver provision it was provided to force non-

6

union hotels to accept collective bargaining representation and to force interference with the procedural aspects of the collective bargaining process by forcing concessions which would otherwise not be considered. Santa Monica Code § 4.67.110 provides that the Chapter (and a few other sections of the Ordinance) "may be waived pursuant to a bona fide collective bargaining agreement." Thus, Santa Monica has declared that a room attendant at the Le Merigot who cleans more than 3,500 square feet is entitled to double pay for the day *unless the union decrees otherwise*. Unions thus have an effective veto over whether the Ordinance will apply to Santa Monica hotels, which will have the effect of giving unions an additional, unnecessary advantage in negotiations with Santa Monica hotels.

### The Ordinance Violates the Dormant Commerce Clause

24. The United States Constitution vests Congress with the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, cl. 3, § 8. Under the doctrine that federal law preempts state law, the U.S. Supreme Court has ruled that there exists a "dormant" Commerce Clause that restricts "the power of states to enact laws imposing substantial burdens on [interstate] commerce." *South-Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 87 (1984). Under the doctrine of the dormant Commerce Clause, state laws will be found invalid if the burden imposed "is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church*, Inc., 397 U.S. 137, 142 (1970).

25. The chilling effect resulting from the increased costs imposed by the restrictions and penalties at issue here on the apparent overwhelming number of visitors coming to Santa Monica from other states will impose a substantial burden on interstate commerce and must therefore be weighed against any averred local benefit, especially one that has no apparent basis.

26. The averred health and safety benefit to workers in Santa Monica provided by the provisions of the Chapter is not supported or supportable and has not

been demonstrated by any research or evidence produced.

27. Moreover, (a) the differences in restrictions attached to smaller hotels verses those larger hotels with more rooms, and (b) the right of a collective bargaining representative to waive the provisions of the Chapter, contradict the premise that the health and safety of room attendants were the motivating factors in the passage of the Chapter provisions.

28. With respect to the Le Merigot and other Santa Monica hotels, for example, only 14% of its guests are residents of the State of California, and the rest hail from out of state. The Le Merigot also advertises outside the State of California to attract non-California clientele to this Santa Monica hotel.

29. The Le Merigot, like most Santa Monica hotels on information and belief, currently requires its room attendants to clean more than 3,500 square feet a day. Thus, the Le Merigot will either have to begin paying its room attendants twice their pay for such work or hire (and pay) additional room attendants to perform the same amount of work. This will cause the Le Merigot to incur significant additional costs which it will have to pass along to its predominantly out-of-state guests (increasing the cost of Santa Monica hotels to its predominantly out-of-state clientele and/or decreasing the number of out-of-state tourists who stay at hotels like the Le Merigot).

30. Santa Monica did no study and did not undertake any reasonable inquiry to determine that 3,500 and 4,000 are reasonable amounts of space for room attendants to clean without affecting the health and safety of the room attendants it claims it seeks to protect. Nor did Santa Monica purport to explain why it is reasonable for a room attendant at a smaller hotel to clean a greater area than at a larger hotel. These factors, together with the provision giving collective bargaining representative entities power to remove the restrictions, make the demonstration of local benefit supporting the imposition of the restrictions and penalties illusory and impossible to establish as a matter of law.

31.     In sum, the Ordinance violates the dormant Commerce Clause because it imposes a substantial burden on interstate commerce that is excessive in relation to the alleged local benefits obtained.

## The Ordinance Is Preempted by Federal and State Law

32.     The United States and the State of California have enacted a substantial body of interrelated laws intended to uniformly adopt and enforce occupational safety and health standards throughout the United States and California.

33.     California employers such as Plaintiff and the putative class of hotel owners and operators are subject to the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651-678, the California Occupational Health and Safety Act of 1973 ("Cal/OSHA"), Cal. Lab. Code § 6300, *et seq.*, and the standards set by the California Occupational Safety and Health Standards Board, California Labor Code § 140.

34.     The Chapter may be held invalid if the Court finds that in passing the California Occupational Safety and Health Act, the Legislature expressly or impliedly manifested its intent to fully occupy that area of the law.

35.     The California Supreme Court has espoused the standard for state preemption of a local ordinance as follows:

> Under . . . the California Constitution, a county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws. If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.  A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication . . . [L]ocal legislation enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area or when it has impliedly done so  . . . .

*Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897-98 (Cal. 1993) (internal quotation marks and citations omitted).

36.     A court looking for implied preemption must consider the entire purpose and scope of the statutory scheme. *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal. 4th 1139, 1157 (Cal. 2006). Implied preemption will be found where: (1) the state law completely covers the subject so as to clearly indicate the matter is one of exclusively state concern; (2) state law partially covers the subject, clearly indicating a paramount state concern that will not tolerate further local action; or (3) state law partially covers the subject and the adverse effect of a local ordinance on transient citizens of the state outweighs the possible municipal benefit. *Id*. at 1157-58

37.     Under Cal. Lab. Code § 142.3, the Standards Board is "the only agency in the state authorized to adopt occupational safety and health standards." Under Cal. Lab. Code § 142.2, at each Standards Board meeting, interested persons are permitted to propose new or revised standards concerning occupational safety and health.

38.     Under this framework, there currently exist detailed standards and penalty schemes applicable to employers such as Plaintiff and the putative class it represents. Cal. Code Regs. tit. 8, § 336.

39.     The Chapter establishes an occupational safety and health standard and penalty scheme that is duplicative of, and in contradiction with, the safety and health framework existing under federal and California law. The Chapter is thus preempted by OSHA and Cal/OSHA.

40.     As set forth above, the Chapter (and its waiver provision) are also preempted by the National Labor Relations Act, 29 U.S.C. §§ 151-169. *See, e.g.*, *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995).

### In the Alternative

41.     In the alternative, and in the event the Court does not invalidate the Chapter as unconstitutional or preempted, Plaintiff seeks a declaration that, if the Chapter requires payment of a penalty if Santa Monica room attendants clean greater than a certain square footage in a workday, there is no penalty if room attendants clean only the permitted area but also do other work other than clean rooms.

42.     The Chapter speaks only to cleaning rooms, imposing a limit on the square footage a room attendant can clean above which the hotel must pay the room attendant twice regular pay for the entire day.  However, the Chapter is silent about what other work such workers may perform in a workday *other than* room cleaning.  For example, the Chapter is silent as to whether a room attendant at the Le Merigot who cleans 3,499 square feet of rooms a day can also work in the laundry for an hour, for example, or clean a hallway, without the hotel having to pay the worker twice the normal rate of pay.

43.     While Plaintiff believes that such additional work is permitted by the express terms of the Chapter, there is little doubt that Santa Monica and the Ordinance's union backers will take a contrary view – namely, that a Santa Monica room attendant who cleans 3,499 square feet of rooms at the Le Merigot cannot do any other work without receiving twice regular pay for the entire workday.

44.     Plaintiff therefore, in the alternative, seeks a declaration and Court determination as whether such additional work is permitted without payment of the penalty.  Plaintiff seeks this alternative relief because the civil remedies provided for in Ordinance 2614 are severe, and include a private right of action for any individual who believes he or she is "aggrieved," entitlement to injunctive relief, penalties of as much as $300 per day per worker, and recovery of attorney's fees and costs in any resulting litigation.  Santa Monica Municipal Code Chapter 4.67.120.

**Class Action Allegations**

45.     Plaintiff brings this action on its own behalf and as a class action on behalf of all of the other 40 hotels located within Santa Monica for declaratory and other relief for those   parties that will be subject to Chapter 467.030(a) of the Ordinance.

46.     This action is properly maintainable as a class action for declaratory and other relief under the applicable Federal Rules of Civil Procedure because:

/ / /

(a)     The Class is so numerous that joinder of all members is impracticable.  There are over forty hotels in Santa Monica that will be subject to the provisions of Chapter 467.030(a) and each will require their room attendants to clean more than 3,500 (or 4,000) square feet of rooms daily.

(b)     Questions of law and fact are common to the Class, and in fact are identical, including the validity of the provisions in Chapter 467.030(a) of the Ordinance (and its waiver provision) under the Dormant Commerce Clause and whether those provisions are preempted by federal or California law or are otherwise in violation of federal or state Constitutional rights.

(c)     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of the claims of other members of the Class, and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(e)     The prosecution of separate actions by individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class that could establish incompatible standards of conduct for Santa Monica hotels, or (ii) adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of other Class members not parties to the adjudications or would substantially impair their ability to protect their interests.

(f)     Santa Monica has acted (and/or refused to act) on grounds that apply generally to the Class, and it is causing injury to Plaintiff and to the Class as set forth herein, such that final declaratory relief is appropriate on behalf of the Class as a whole.

(g)     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such

that a class action is superior to any other available method for fairly and efficiently adjudicating this controversy.

## COUNT ONE

### (For Declaratory Relief)

47.     Plaintiff incorporates by reference herein the paragraphs above as though fully set forth herein.

48.     Based on the foregoing, an actual controversy has arisen and now exists between the parties concerning the validity and constitutionality of Chapter 4.67.030(a) of the Ordinance (and its waiver provision), and Plaintiff's and the putative Class Members' obligations, if any, under this law, for which Plaintiff seeks a declaration of rights.

49.     A judgment is necessary declaring that Chapter 4.67.030(a) of the Ordinance is invalid and unenforceable under the Dormant Commerce Clause and/or as preempted by, in conflict with, or otherwise invalid under federal law and California law as set forth herein; or, in the alternative, Defendant denies that the Ordinance (if enforceable) permits room attendants to perform additional non-room-cleaning work without receiving double pay for the day, as set forth herein.

50.     An adversarial conflict exists between Plaintiff and the putative class members on one hand and the Defendant City of Santa Monica on the other arising from the terms of the Chapter and its effective date of January 1, 2020.

51.     There is a substantial controversy between the parties, who have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The controversy between the parties is thus immediate and real, and the dispute is concrete, tangible, and bounded.

52.     The provisions of Chapter 4.67.030(a) of the Ordinance will go into effect on January 1, 2020, unless this Court issues the requested relief, creating a real and reasonable apprehension on the part of Plaintiff and all putative class members, especially in light of the economic effect of having the provisions of the Chapter

made applicable including the draconian penalties applicable under the Chapter's provisions.

53.     Plaintiff therefore seeks entry of a declaratory judgment that the subject provisions of the Ordinance are invalid and unenforceable under the Dormant Commerce Clause, and/or as preempted by, invalid under, and in conflict with federal law and California law.

## COUNT TWO

### (Chapter 4.67.030(a) of the Ordinance (and Its Waiver Provision) Are Preempted by the National Labor Relations Act)

54.     Plaintiff incorporates by reference herein the paragraphs of this Complaint as though fully set forth herein.

55.     As set forth herein, a declaratory judgment is necessary in that Chapter 4.67.030(a) (and its waiver provision) are unenforceable because they are preempted by and in conflict with the National Labor Relations Act in interfering with the process of collective bargaining as made unlawful and preempted by the *Machinists* doctrine.

## COUNT THREE

### (Chapter 4.67.030(a) of the Ordinance Is Invalid under the Dormant Commerce Clause)

56.     Plaintiff incorporates by reference herein the paragraphs of this Complaint as though fully set forth herein.

57.     As set forth herein, a declaration that Chapter 4.67.030(a) of the Ordinance is void is necessary in that the provisions contained therein are invalid and unenforceable under the dormant Commerce Clause of the United States Constitution.

/ / /

/ / /

/ / /

## COUNT FOUR

### (Chapter 4.67.030(a) of the Ordinance Is Preempted

### by Federal and State Occupational Health and Safety Laws)

58.     Plaintiff incorporates by reference herein the paragraphs of this Complaint as though fully set forth herein.

59.     As set forth herein, a declaratory judgment is necessary in that Chapter 4.67.030(a) is preempted by and in conflict with federal and state occupational health and safety laws, including OSHA and Cal/OSHA.

## COUNT FIVE

### (42 U.S.C. § 1983)

60.     Plaintiff incorporates by reference herein the paragraphs of this Complaint as though fully set forth herein.

61.     Chapter 4.67.030(a) of the Ordinance (and its waiver provision) are void as violating the rights of the Plaintiff hotels doing business in the Santa Monica as set forth herein in violation of the provisions of 42 U.S.C. §1983, as the Defendant acting under color of law will have violated Plaintiff's and the putative class members' rights secured to them by the Constitutions of the United States and California.

## COUNT SIX

### (Temporary Restraining Order and

### Preliminary and Permanent Injunctions)

62.     Plaintiff incorporates by reference herein the paragraphs of this Complaint as though fully set forth herein.

63.     As set forth herein, Plaintiff has a likelihood of success on the merits of its arguments that the Chapter is unconstitutional and/or preempted.

64.     Plaintiff will suffer irreparable injury if the requested injunctive relief is not granted.  Plaintiff and the putative class members will be forced to hire (and pay) additional room attendants, and will further incur extra administrative costs, as the

Le Merigot and other putative class members will now have to hire/pay additional employees to administer the room cleaning system.  This will cause Plaintiff and/or other class members to pass these costs along to the Le Merigot's predominantly out-of-state clientele.

65.   In the alternative, serious questions of law – which are substantial, difficult, and doubtful, which makes them fair ground for litigation and thus for more deliberative investigation – have been raised with respect to the validity of the Chapter and the balance of hardships tilts in Plaintiff's favor.

66.   Consideration of the public interest further weighs in favor of granting the requested injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a)   Certifying this action as a class action and Plaintiff as a Class Representative;

(b)   Approving Plaintiff's present attorneys as Class Counsel;

(c)   Entering preliminary and permanent injunctions preventing Chapter 4.67.030(a) and its waiver provision from taking effect;

(d)   Entering a Declaratory Judgment that Chapter 4.67.030(a) (and its waiver provision) are (i) invalid and unenforceable under the Dormant Commerce Clause; (ii) preempted by and in conflict with federal and California occupational health and safety laws; and/or (iii) preempted by the National Labor Relations Act;

(e)   In the alternative to the actions requested in subparagraph (d) above, if the Court finds the subject provisions of the Ordinance enforceable, that it declare that room attendants adhering to the reduced cleaning workloads be permitted to perform additional non-room-cleaning work without imposition of the economic penalties set forth in the Ordinance;

(f)   An award of Plaintiff's costs and reasonable attorney's fees expended in connection with this action; and

16

(g)     Such other and further relief as the Court may deem proper.

DATED:  November 21, 2019

STOKES WAGNER ALC

By: /s/ Peter B. Maretz
PETER B. MARETZ
JAMIE L. SANTOS
Attorneys for Plaintiff COLUMBIA
SUSSEX MANAGEMENT, LLC,
individually and on behalf of all other hotel
owners and managers operating hotels in
Santa Monica, California

17

# EXHIBIT 1

# EXHIBIT 1

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

City Council Meeting: September 10, 2019                Santa Monica, California

ORDINANCE NUMBER 2614 (CCS)

(City Council Series)

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF
SANTA MONICA ADOPTING SANTA MONICA MUNICIPAL CODE CHAPTER 4.67
TO ENHANCE PROTECTION OF HOTEL WORKERS
IN THE LOCAL HOSPITALITY INDUSTRY

WHEREAS, by letter dated September 13, 2018, the Commission on the Status of Women requested the City Council of the City of Santa Monica to adopt legislation to protect hotel workers from physical violence, provide them fair compensation, and require education and training to enable hotel workers to protect their own rights and safety as well as public health and safety; and

WHEREAS, on October 23, 2018, the City Council directed staff to prepare an ordinance for Council consideration based on all of the elements included in the Commission on the Status of Women's letter; and

WHEREAS, on August 13, 2019, the City Council directed staff to include a worker retention policy in the ordinance prepared for Council consideration; and

WHEREAS, other cities in California and other states have adopted local legislation to protect the safety and security and improve working conditions of hotel employees within their respective jurisdictions; and

WHEREAS, hotel workers are vital contributors to the Santa Monica community and the hospitality industry is an essential component of the City's economy; and

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

WHEREAS, hotel workers who work by themselves in guest rooms are vulnerable to crimes and other threatening behavior, including sexual assault; and

WHEREAS, ensuring that hotel workers are equipped with personal security devices and supported in their ability to report criminal and threatening behavior to the proper authorities will promote their personal safety and improve public safety overall; and

WHEREAS, hotel workers are subject to being assigned overly burdensome workloads and unexpected overtime; and

WHEREAS, ensuring that hotel workers receive fair compensation when their work assignments exceed proscribed limits will promote the public interest and enable hotel workers to receive fair pay for honest work, to perform their work in a manner that adequately protects their personal wellbeing, and to meet personal and family obligations; and

WHEREAS, changes in ownership, control, or operation of hotels occur frequently in the hotel industry and can trigger mass layoffs of hotel workers and displace employees who are skilled, knowledgeable, and experienced in providing a safe, clean, and enjoyable experience for the millions of visitors who come to Santa Monica each year; and

WHEREAS, ensuring that hotel workers have an opportunity to continue working for a hotel upon change in hotel ownership, control, or operation will prevent both unnecessary disruption to the labor market and increased demands on social services provided by the City, and thereby maintain the stability and high level of service in the hospitality and tourism businesses in the City, which promotes the public welfare; and

WHEREAS, hotel workers are uniquely positioned to identify and report potential threats or crimes, including potential instances of human trafficking, domestic and sexual violence, and the presence of suspicious materials that may be linked to other potential criminal activity; and

WHEREAS, thorough housekeeping services are essential to preventing and avoiding the spread of disease and pests that pose potential risks to public health and the enjoyment of guests; and

WHEREAS, ensuring that hotel workers are provided with adequate training and education to establish a baseline level of knowledge on key issues affecting the public and their own wellbeing will ensure that hotel workers and visitors alike have safe and healthy experiences during their time in Santa Monica; and

WHEREAS, given that tourism is one of the largest industries in the City and in the entire region, establishing the foregoing safety and security measures, fair compensation, workforce stability, training and education, and worker retention standards for hotel workers will not only improve worker safety and working conditions, but also benefit the local and regional economy overall, and thereby promote the public health, safety, and welfare.

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF SANTA MONICA DOES HEREBY ORDAIN AS FOLLOWS:

SECTION 1. Santa Monica Municipal Code Chapter 4.67 is hereby adopted to read as follows:

## Chapter 4.67 HOTEL WORKER PROTECTION

**4.67.010 Definitions.**

As used in this chapter:

(a)     "Additional bed room" means a guest room with an additional bed or beds other than those regularly within the guest room, such as a cot or rollaway bed.

(b)     "Adverse employment action" means an action that detrimentally and materially affects the terms, conditions, or privileges of employment, including but not limited to any act to discharge, reduce in compensation, reduce work hours, alter established work schedules, increase workload, impose fees or charges, or change duties of a hotel worker.

(c)     "Affected hotel" means: (1) in the event of a change in control as defined in (d)(1) below, the hotel or discrete portion of the hotel that has been the subject of the change in control and remains in operation following the chance in control; or (2) in the event of a change in control as defined in (d)(2) or (d)(3) below, the hotel that remains in operation following the change in control of that hotel.

(d)     "Change in control" means (1) any sale, assignment, transfer, contribution, or other disposition of all or substantially all of the assets used in the operation of a hotel or a discrete portion of the hotel that continues in operation as a hotel; (2) any sale, assignment, transfer, contribution, or other disposition of a controlling interest

4

(including by consolidation, merger, or reorganization) of a hotel employer or any

person who controls a hotel employer; or (3) any other event or sequence of events

(including a purchase, sale, lease, or termination of a management contract or lease)

that causes the identity of the hotel employer at a hotel to change. For purposes of this

chapter, a change in control shall be defined to occur on the date of execution of the

document effectuating the change in control.

(e)     "Checkout room" means a guest room to be cleaned by a hotel worker due

to the departure of the guest assigned to that room.

(f)     "City" means the City of Santa Monica.

(g)     "Eligible hotel worker" means a hotel worker employed by an incumbent

hotel employer at the time of a change in control and who has been so employed for at

least two months prior to the change in control.

(h)     "Emergency" means an immediate threat to public safety or of substantial

risk of property loss or destruction.

(i)     "Guest" means a registered guest of a hotel, a person occupying a guest

room with a registered guest, or a visitor invited to a guest room by a registered guest or

other person occupying a guest room.

(j)     "Guest room" means any room or suite of rooms intended to be used by a

guest of a hotel for sleeping purposes.

(k)     "Hotel" means an establishment that provides temporary lodging in the form

of overnight accommodations in guest rooms to transient patrons who maintain a

permanent place of residence elsewhere for payment for periods of 30 consecutive

calendar days or less, and may provide additional services, such as conference and

meeting rooms, restaurants, bars, or recreation facilities available to guests or to the general public. "Hotel" includes motor lodges, motels, apartment hotels, and tourist courts meeting the definition set forth above. "Hotel" also includes any contracted, leased or sublet premises operated in conjunction with a hotel or that is used for the primary purpose of providing services at a hotel. "Hotel" does not include a hostel, which is a lodging facility primarily characterized by dormitory-style accommodations, shared bathrooms, and reservations of beds rather than rooms. "Hotel" also does not include corporate housing, rooming houses, boarding houses, or private residential clubs, single-room occupancy housing, vacation rentals, or bed and breakfast establishments within a single-unit residence.

(l)     "Hotel employer" means any person who owns, controls, or operates a hotel in the City, and includes any person or contractor who, in a managerial, supervisory, or confidential capacity, employs hotel workers to provide services at a hotel in conjunction with the hotel's purpose.

(m)     "Hotel worker" means any person who is employed by a hotel employer to provide services at a hotel. "Hotel worker" does not include a managerial, supervisory or confidential employee.

(n)     "Hotel worker retention period" means the period of time beginning on the date of a change in control and extending to 90 days from the first date that an affected hotel is open to the public after a change in control.

(o)     "Incumbent hotel employer" means a hotel employer who owns, controls, or operates a hotel prior to a change in control of the hotel or of a discrete portion of the hotel that continues to operate as a hotel after the change in control.

6

(p)     "Personal security device" means a portable emergency contact device, including but not limited to a panic button, that is designed so that a hotel worker can quickly and easily activate such device to summon to the hotel worker's location prompt assistance by a hotel security officer, manager or supervisory hotel staff member designated by a hotel employer.

(q)     "Room attendant" means a hotel worker whose principal duties are to clean and put in order guest rooms in a hotel.

(r)     "Successor hotel employer" means a hotel employer who owns, controls, or operates a hotel after a change in control.

(s)     "Violent or threatening conduct" means: (1) any conduct that involves the use of physical violence or that would reasonably be interpreted as conveying a threat of the use of physical violence, and includes but is not limited to rape, assault (including sexual assault), and battery (including sexual battery), as defined by the California Penal Code, as well as any threat or attempt to commit such an act; or (2) any sexual conduct, or solicitation to engage in sexual conduct, directed by a guest at a hotel worker without the consent of the hotel worker and includes, but is not limited to, indecent exposure as defined by the California Penal Code.

(t)     "Workday" means any consecutive 24-hour period commencing at the same time each calendar day.

**4.67.020 Measures to protect hotel workers from violent or threatening conduct.**

(a)     **Personal security devices.**

(1)     A hotel employer shall provide a personal security device to each hotel worker assigned to work in a guest room or restroom facility where other hotel

7

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

employees are not present in the guest room or restroom facility. The personal security device shall be provided at no cost to the hotel worker.

(2)     A hotel worker may activate a personal security device whenever a hotel worker reasonably believes that violent or threatening conduct or an emergency is occurring in the hotel worker's presence.  Immediately prior to or upon activating the device, the hotel worker may cease work and leave the immediate area of danger to await assistance.  No hotel worker shall be subject to an adverse employment action for activating a personal security device or for ceasing work to await assistance absent clear and convincing evidence that the hotel worker knowingly and intentionally made a false claim of emergency.

(3)     A hotel employer shall assign a security guard, manager or supervisory hotel staff member to provide immediate on-scene assistance in the event that a personal security device is activated.

(b)     **Hotel workers' rights.**  A hotel worker who brings to the attention of a hotel employer violent or threatening conduct by a hotel guest shall be afforded the following rights:

(1)     A hotel employer shall immediately allow a hotel worker sufficient paid time to report the violent or threatening conduct to a law enforcement agency and to consult with a counselor or advisor of the hotel worker's choice.

(2)     A hotel employer shall not prevent, or attempt to prevent, a hotel worker from reporting violent or threatening conduct to a law enforcement agency.

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

(3)     A hotel employer shall not take or threaten to take any adverse employment action against a hotel worker based on the hotel worker's decision not to report violent or threatening conduct to a law enforcement agency.

(4)     Upon request by a hotel worker, a hotel employer shall provide reasonable accommodations to a hotel worker who has been subjected to violent or threatening conduct. Reasonable accommodations may include, but are not limited to, a modified work schedule, reassignment to a vacant position, or other reasonable adjustment to job structure, workplace facility, or work requirements.

(c)     **Notice.** A hotel employer shall place on the back of the entrance door to each guest room and restroom facility in a hotel a sign written in a font size of no less than 18 points, that includes the heading "The Law Protects Hotel Workers From Threatening Behavior," provides a citation to this chapter of the Santa Monica Municipal Code, and notifies guests that the hotel employer provides personal security devices to its employees.

(d)     **Training.** A hotel employer shall provide training to its hotel workers regarding how to use and maintain a personal security device, the hotel employer's protocol for responding to activation of a personal security device, and the rights of hotel workers and obligations of the hotel employer as set forth in this section. Such training shall be provided to hotel workers on the later of the effective date of this chapter or within one month of the hotel worker's date of hire.

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

**4.67.030 Measures to provide fair compensation for workload.**

(a) **Workload limitation.** For hotels with fewer than 40 guest rooms, a hotel employer shall not require a room attendant to clean rooms amounting to a total of more than 4,000 square feet of floor space in any eight-hour workday, unless the hotel employer pays the room attendant twice the room attendant's regular rate of pay for each and every hour worked during the workday. For hotels with 40 or more guest rooms, a hotel employer shall not require a room attendant to clean rooms amounting to a total of more than 3,500 square feet of floor space in any eight-hour workday, unless the hotel employer pays the room attendant twice the room attendant's regular rate of pay for each and every hour worked during the workday. If a room attendant is assigned to clean seven or more checkout or additional bed rooms during any eight-hour workday, each such checkout or additional bed room shall for purposes of this subsection count as 500 square feet, regardless of the actual square footage of each room. The limitations contained herein apply to any combination of spaces, including guest rooms, meeting rooms, and other rooms within the hotel, and apply regardless of the furniture, equipment, or amenities in such rooms.

(b) **Workload proration.** The maximum floor space set forth in subsection (a) shall be reduced on a prorated basis if a room attendant works less than eight hours in a workday, shall be increased on a prorated basis for each hour of overtime that a room attendant works in excess of eight hours in a workday, and shall be calculated on a prorated basis by room attendant if a room attendant is assigned to clean rooms jointly with one or more other room attendants.

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

(c)   **Voluntary overtime.**  A hotel employer shall not require or permit a hotel worker to work more than 10 hours in a workday unless the hotel worker consents in writing to do so. A hotel worker's consent shall not be valid unless the hotel employer has advised the hotel worker in writing seven days prior to the hotel worker's consent that the hotel worker may decline to work more than 10 hours in a workday and that the hotel employer will not subject the hotel worker to any adverse employment action for declining to work more than 10 hours in a workday. This subsection shall not apply in the event of an emergency.

(d)   **Preservation of records.**  Each hotel employer shall maintain for at least two years a record of each room attendant's name, rate of pay, pay received, rooms cleaned or total square footage cleaned for each workday, overtime hours worked for each workday, and any written consents provided pursuant to subsection (b) above. A hotel employer shall make these records available for inspection and copying to any hotel worker or hotel worker's employee representative, except that the names and other personally identifying information of individual hotel workers shall be redacted except to the extent that the records identify the hotel worker who is making the request.

**4.67.040 Notice of change in control.**

(a)   Within five days of a change in control, a successor hotel employer shall post written notice of the change in control at the location of the affected hotel.  This written notice shall remain posted during any closure of the affected hotel and for six months following the first date on which the affected hotel is open to the public under the successor hotel employer.

(b)     This written notice shall include, but not be limited to, the name and contact information of the incumbent hotel employer, the name and contact information of the successor hotel employer, and the effective date of the change in control.

(c)     This written notice shall be posted in a conspicuous place at the affected hotel and shall be readily visible to eligible hotel workers, other employees, and applicants for employment.

**4.67.050  Hotel worker retention.**

(a)     Within 15 days of a change in control, an incumbent hotel employer shall provide a successor hotel employer with a list of eligible hotel workers.  This list shall include the name, date of hire, and job classification of each eligible hotel worker.  A successor hotel employer shall be required to maintain and hire from this list during the hotel worker retention period.

(b)     A successor hotel employer shall, during the hotel worker retention period, offer each eligible hotel worker employment for no less than 90 days, except that:

(1)     A successor hotel employer shall not be required to offer employment to an eligible hotel worker if the successor hotel employer has reasonable and substantiated cause not to retain that eligible hotel worker based on that eligible hotel worker's individual performance or conduct while employed by the incumbent hotel employer; and

(2)     If a successor hotel employer determines during the hotel worker retention period that it requires fewer hotel workers than were required by the incumbent hotel employer, the successor hotel employer shall retain eligible hotel workers pursuant to the terms of a relevant collective bargaining agreement, if any,

or by seniority and experience within each job classification to the extent that comparable job classifications exist.

(c)     An eligible hotel worker retained pursuant to this section shall be employed under terms and conditions established by the successor hotel employer as required by law and shall not be discharged except for good cause based on individual performance or conduct.

(d)     An offer of employment made pursuant to subsection (b) shall be made in writing and shall remain open for at least ten business days from the date of the offer.

(e)     A successor hotel employer shall retain written verification of each offer of employment made pursuant to subsection (b).  This verification shall include the name, address, date of hire, and job classification of the eligible hotel worker to whom the offer was made.  A successor hotel employer shall retain the required verification for no less than three years from the date the offer is made.

(f)     At the end of the hotel worker retention period, a successor hotel employer shall provide each hotel worker retained pursuant to this section with a written performance evaluation. If the hotel worker's performance was satisfactory, the successor hotel employer shall consider offering the hotel worker continued employment under the terms and conditions established by the successor hotel employer and as required by law. A successor hotel employer shall retain the written performance evaluation required under this subsection for no less than three years from the date it is issued.

(g)     The rights to retention set forth in this section do not apply to any managerial, supervisory, or confidential employee and do not include the right to retain any supervisory or management responsibility.

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

**4.67.060 Public housekeeping training.**

      (a)      The City manager, or designee, shall establish a process whereby the City will certify and designate a "Public Housekeeping Training Organization."  The certification and designation of the Public Housekeeping Training Organization shall be carried out by the City Manager, or designee, subject to ratification by the City Council.

      (b)      In order to become certified as the designated Public Housekeeping Training Organization, the organization shall meet requirements set forth by the City manager, or designee, that shall include but not be limited to the following:

      (1)      The Public Housekeeping Training Organization must have experience providing training to hotel workers or immigrant low-wage workers, utilize interactive teaching strategies that engage across multiple literacy levels, and provide trainers and educators who are culturally competent and fluent in the language or languages that hotel workers understand.

      (2)      The Public Housekeeping Training Organization shall offer a "Public Housekeeping Training Program" that includes no less than six hours of training, including live and interactive instruction, on the following elements, except that the City manager, or designee, may determine that any element below is separately and sufficiently required by State or local law, in which case the element may be eliminated and the total training time reduced accordingly:

      (A)      hotel worker rights and hotel employer responsibilities under this chapter and Chapter 4.63 of this Code;

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

(B)      best practices for identifying and responding to suspected instances of human trafficking, domestic violence, or violent or threatening conduct;

(C)      best practices for effective cleaning techniques to prevent the spread of disease;

(D)      best practices for identifying and avoiding insect or vermin infestations; and

(E)      best practices for identifying and responding to the presence of other potential criminal activity.

(3)      The Public Housekeeping Training Organization may coordinate with a hotel employer to ensure that training content aligns where appropriate with the hotel employer's policies and procedures.  Ultimate discretion regarding training content shall remain with the Public Housekeeping Training Organization, subject to requirements set forth by the City manager, or designee.

(4)      The Public Housekeeping Training Organization shall administer a "Public Housekeeping Examination" to hotel workers who complete its training program.  The Public Housekeeping Examination shall test basic proficiency in the required training elements.

(5)      The Public Housekeeping Training Organization shall promptly issue a "Public Housekeeping Certificate" to any person who successfully completes its Public Housekeeping Training Program and Public Housekeeping Examination. A Public Housekeeping Certificate shall be valid for a period of five years.

(6)     The Public Housekeeping Training Organization shall offer a right of review to an individual who completes the Public Housekeeping Training Program but does not successfully complete the Public Housekeeping Examination.

(c)     A hotel employer shall contract with the certified Public Housekeeping Training Organization to, no less than annually, conduct a Public Housekeeping Training Program, administer a Public Housekeeping Examination, and issue a Public Housekeeping Certificate to each person who has successfully completed the Public Housekeeping Training Program and Public Housekeeping Examination. A hotel employer shall document compliance with the training requirement set forth in this section by completing and signing a form as required by the City to certify that the training was conducted. The Public Housekeeping Training Organization that provides such a training shall submit a report to the City within five days of the training to document the date on which the training was held and the names of all hotel workers who received Public Housekeeping Certificates.

(d)     No hotel employer shall employ a hotel worker to work as a room attendant for more than 120 days unless the hotel worker presents the hotel employer with a valid Public Housekeeping Certificate.  This subsection shall become effective one year from the effective date of this chapter.

(e)     Each hotel employer shall retain records sufficient to demonstrate compliance with this section, including a copy of a valid Public Housekeeping Certificate for each hotel worker then assigned to work as a room attendant.

**4.67.070 Limited waiver for certain hotel employers.**

(a)     The City manager, or designee, shall grant a waiver from the requirements of this chapter to any hotel employer who demonstrates that compliance with this chapter would require the hotel employer, in order to avoid bankruptcy or a shutdown of the hotel employer's hotel, to reduce its workforce by more than 20 percent or curtail its hotel workers' total hours by more than 30 percent. The City manager, or designee, shall grant such a waiver only after reviewing a hotel employer's financial condition at the hotel employer's expense.  A waiver granted under this section shall be valid for no more than one year. A determination by the City manager, or designee, to grant or deny a request for waiver under this section may be appealed to a hearing examiner pursuant to Chapter 6.16 of this Code.

(b)     Prior to submitting a waiver application pursuant to this section, a hotel employer shall provide written notice of the waiver application to all hotel workers employed by the hotel employer.  Within three days of receiving a waiver determination from the City manager, or designee, under this section, a hotel employer shall provide written notice of the determination to all hotel workers employed by the hotel employer.

**4.67.080 Notice.**

A hotel employer shall provide written notice of the hotel workers' rights set forth in this chapter to each hotel worker at the time of hire or on the effective date of this chapter, whichever is later.  Such written notice shall be provided in English, Spanish and any other language spoken by five percent or more of the hotel workers employed by the hotel employer.

**4.67.090 Retaliatory action prohibited.**

No person shall take an adverse employment action against a hotel worker for exercising rights protected under this chapter. There shall be a rebuttable presumption that an adverse employment action taken against a hotel worker within 90 days of the hotel worker's exercise of rights under this chapter was taken in retaliation for the exercise of such rights.

**4.67.100 Administrative regulations.**

The City manager, or designee, is authorized to adopt administrative regulations that are consistent with and in furtherance of the provisions of this chapter. Violations of the administrative regulations adopted pursuant to this section shall constitute violations of this chapter and shall subject the violator to the penalties set forth in this chapter.

**4.67.110 Supersession by collective bargaining agreement.**

The provisions of sections 4.67.030, 4.67.040, and 4.67.050, or any part thereof, may be waived pursuant to a bona fide collective bargaining agreement, but only if the waiver is expressly set forth in clear and unambiguous written terms. Neither party to a collective bargaining relationship may waive or supersede any provision of this chapter by means of unilaterally imposed terms and conditions of employment.

**4.67.120 Civil remedies.**

(a)     **Civil action.** The City or any aggrieved person may enforce the provisions of this chapter by means of a civil action.

(b)     **Injunction.**  Any person who commits an act, proposes to commit an act, or engages in any pattern or practice that violates this chapter may be enjoined therefrom by a court of competent jurisdiction.  An action for injunction under this subsection may

be brought by any aggrieved person, by the City Attorney, or by any person or entity who will fairly and adequately represent the interests of an aggrieved person or persons.

(c)     **Damages and penalties.**  Any person who violates the provisions of this chapter is liable for any actual damages suffered by any aggrieved person or for statutory damages up to the amount of $100 per aggrieved person per day, except that statutory damages for failure to maintain records shall not exceed $1,000 per day in total.   For willful violations, the amount of monies and penalties to be paid under this subsection shall be trebled.

(d)     **Attorneys' fees and costs.**  In a civil action brought under this section, the court shall award the prevailing party reasonable attorneys' fees and costs, including expert witness fees, except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so.

(e)     **Cumulative remedies.**   The remedies set forth in this chapter are cumulative. Nothing in this chapter shall be interpreted as restricting, precluding, or otherwise limiting a separate or concurrent criminal prosecution under this Code or State law.

**4.67.130 Effective date.**

This chapter shall become effective on January 1, 2020, with the exception of section 4.67.050, which shall become effective immediately.

SECTION 2. If any section, subsection, sentence, clause, or phrase of this Ordinance is for any reason held to be invalid or unconstitutional by a decision of any

court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The City Council hereby declares that it would have passed this Ordinance and each and every section, subsection, sentence, clause, or phrase not declared invalid or unconstitutional without regard to whether any portion of the ordinance would be subsequently declared invalid or unconstitutional.

SECTION 3. The Mayor shall sign and the City Clerk shall attest to the passage of this Ordinance. The City Clerk shall cause the same to be published once in the official newspaper within 15 days after its adoption.

APPROVED AS TO FORM:

_____   _____

LANE DILG
City Attorney

DocuSign Envelope ID: F715789C-F2B4-4BB5-A30C-216D529F116A

Approved and adopted this 10th day of September, 2019.

DocuSigned by:

8FE4004DAD0B40B...

Gleam Davis, Mayor

State of California          )
County of Los Angeles   ) ss.
City of Santa Monica      )


I, Nikima S. Newsome, Assistant City Clerk of the City of Santa Monica, do hereby certify that the foregoing Ordinance No. 2614 (CCS) had its introduction on August 27, 2019, and was adopted at the Santa Monica City Council meeting held on September 10, 2019, by the following vote:


AYES:      Councilmembers Morena, Himmelrich, Winterer, Jara, Mayor Pro Tem O'Day, Mayor Davis

NOES:      None

ABSENT:   Councilmember McKeown


ATTEST:

DocuSigned by:

7032851F371E430...

Nikima S. Newsome, Assistant City Clerk

9/20/2019

Date


A summary of Ordinance No. 2614 (CCS) was duly published pursuant to California Government Code Section 40806.