O

# United States District Court
# Central District of California

COLUMBIA SUSSEX MANAGEMENT, LLC, and CW HOTEL LIMITED PARTNERSHIP, individually and on behalf of all other hotel owners and managers operating hotels in Santa Monica, California,

Plaintiffs,

v.

CITY OF SANTA MONICA,

Defendant.

Case № 2:19-CV-09991-ODW (SKx)

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [24] and VACATING DECEMBER 23 HEARING**

## I. INTRODUCTION

Plaintiffs Columbia Sussex Management, LLC, and CW Hotel Limited Partnership ("Plaintiffs") sued the City of Santa Monica ("City") seeking a finding that Santa Monica Municipal Code ("SMMC") Chapter 4.67.030(a) (the "Ordinance") is unconstitutional, invalid, and preempted. (First Am. Compl. ("FAC") ¶ 4, ECF No. 4.) Plaintiffs move with expedited briefing for a preliminary injunction to prevent the Ordinance from taking effect ("Motion"). (*See* Mot. Prelim. Inj. ("Mot."), ECF No. 24.) For the reasons below, the Court **DENIES** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the Court **VACATES** the motion hearing on December 23, 2019, at 10:00 a.m.

## II. FACTUAL BACKGROUND

On September 10, 2019, the Santa Monica City Council adopted Chapter 4.67, including the Ordinance, with the stated purpose "to Enhance Protection of Hotel Workers in the Local Hospitality Industry." (FAC ¶ 18.) Entitled "Measures to Provide Fair Compensation for Workload," the Ordinance limits hotel employees who clean guest rooms ("Room Attendants") from cleaning more than a specified square footage of floor space during their scheduled shift. (Mot. 1; FAC ¶ 20 (quoting the Ordinance).) At hotels with fewer than forty rooms, Room Attendants may not be required to clean more than 4000 square feet in an eight-hour workday. SMMC § 4.67.030(a). At hotels with forty or more rooms, Room Attendants may not be required to clean more than 3500 square feet in an eight-hour workday. *Id.* If a Room Attendant is required to exceed these limits, the hotel employer must compensate the Room Attendant at twice the regular rate of pay for all hours worked in that workday. *Id.* The Ordinance may be waived "pursuant to a bona fide collective bargaining agreement." *Id.* § 4.67.110. As relevant here, Chapter 4.67 will take effect on January 1, 2020. *Id.* § 4.67.130.

On November 21, 2019, Plaintiffs filed this class action lawsuit on behalf of "all of the other 40 hotels located within Santa Monica." (*See* Compl., ECF No. 1; FAC ¶ 45.) Plaintiffs seek declaratory and injunctive relief, including findings that the Ordinance is unconstitutional, invalid, and preempted. (FAC ¶¶ 47–66.) On November 27, 2019, the parties stipulated to an expedited briefing schedule for Plaintiffs' Motion. (Stipulation, ECF No. 17.) Accordingly, on December 2, 2019, Plaintiffs moved for a preliminary injunction to prevent the Ordinance from going into effect as scheduled. (*See* Mot.) The City opposed and Plaintiffs replied. (Opp'n to Mot. ("Opp'n"), ECF No. 26; Reply, ECF No. 32.) The Court now addresses Plaintiffs' Motion.

2

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008); *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (discussing that plaintiffs "face a difficult task in proving that they are entitled to this 'extraordinary remedy'"). Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). Thus, "[r]egardless of how the test for a preliminary injunction is phrased, the moving party must demonstrate irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. REQUESTS FOR JUDICIAL NOTICE

As a preliminary matter, both parties request that the Court take judicial notice of various documents. Federal Rule of Evidence 201 allows a court to take judicial

notice of a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

Plaintiffs request judicial notice of four documents but provide no support for the authenticity of the documents or the propriety of judicial notice. (*See* Pls.' Req. for Judicial Notice ("RJN"), ECF No. 24-3.) Accordingly, the Court **DENIES** Plaintiffs' request. The City requests judicial notice of SMMC Chapter 4.63 and California Code of Regulation, title 8, section 3345. (City's RJN, ECF No. 27.) The Court **DENIES** the City's request as moot because "the Court need not judicially notice these authorities in order to consider them." *Otero v. Zeltiq Aesthetics, Inc.*, No. CV 17-3994-DMG (MWRx), 2018 WL 3012942, at *1 (C.D. Cal. June 11, 2018.)

## V. DISCUSSION

Plaintiffs move for a preliminary injunction to prevent the challenged portions of the Ordinance from taking effect on January 1, 2020. (Mot. 1–2.) Plaintiffs challenge only section 4.67.030(a) ("Ordinance" or "Workload Limitation") and its corresponding collective bargaining waiver provision, section 4.67.110 ("Waiver"); Plaintiffs challenge no other part of the Chapter. (Mot. 1 n.1.) Plaintiffs contend the putative class of Santa Monica hotel owners and operators will be irreparably harmed if these provisions are permitted to take effect on January 1, 2020. (Mot. 2.) They argue the Ordinance is (1) preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA") under *Machinists* preemption; (2) invalid under the dormant Commerce Clause ("DCC"); and (3) preempted by the California Occupational Health and Safety Act of 1973, Cal. Lab. Code § 6300 *et seq.* ("CalOSHA"). (Mot. 2.)

### A. Irreparable Harm

"[P]laintiffs seeking preliminary injunctive relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. A mere possibility of irreparable harm is insufficient. *Id.* "[A] party is not entitled to a

preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature." *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519 (9th Cir. 1984) (citing *Los Angeles Mem. Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980)); *but see Herb Reed Enters., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (discussing, in the trademark context, that "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm"). "[P]laintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from the harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Plaintiffs argue they will suffer irreparable harm because they will have to pay their current Room Attendants double their current rate, or hire and pay additional Room Attendants, because their Room Attendants currently clean more than the permitted square footage under the Ordinance. (Mot. 6.) They contend that additional administrative costs will also result from the need to track Room Attendants' assigned square footage. (Mot. 7.) Plaintiffs argue this additional cost may result in loss of customers and customer goodwill "if [Plaintiffs and the putative class are] forced to pass along their increased costs to their customer base." (Mot. 6.)

First, Plaintiffs' alleged harm is merely pecuniary, and insufficient to support a preliminary injunction, to the extent Plaintiffs argue such harm is the result of paying current Room Attendants more, paying additional Room Attendants, or incurring additional administrative costs. *See Idaho v. Coeur d'Alene Tribe*, 794 F3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation.")

Next, Plaintiffs' alleged harm is speculative, and again fails to support a preliminary injunction, to the extent Plaintiffs argue such harm results from lost customers or customer goodwill. Plaintiffs argue they will lose customers and customer goodwill "if forced to pass along their increased costs to their customer

base." (Mot. 6.) That is, *if* Plaintiffs elect to pass costs along to their customers, they believe they *may* lose customers or goodwill as a result. Plaintiffs offer insufficient facts or evidence to support this belief.[2] Such unsupported speculation "does not rise beyond the mere 'possibility' of harm." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 412 (9th Cir. 2015) (quoting *Winter*, 555 U.S. at 22); *see also Regents of Univ. of Cal.*, 747 F.2d at 523 ("It is . . . well-settled that a preliminary injunction cannot be issued to prevent a mere speculative injury."). Further, the alleged harm is self-inflicted, as the choice to pass any additional costs on to clientele is Plaintiffs, and Plaintiffs submit nothing that suggests the other putative class member-Santa Monica hotels will elect to do the same.

Even were it not speculative, Plaintiffs' argument that damage to customer goodwill constitutes irreparable harm is not persuasive. "'[E]conomic and reputational injuries' are generally not irreparable" because they "can be adequately compensated at a later date, in the ordinary course of litigation." *Woodfin Suite Hotels, LLC v. City of Emeryville*, No. C. 06-1254 SBA, 2006 WL 2739309, at *11 (N.D. Cal. Aug. 23, 2006). In *Woodfin*, a hotel company sought a preliminary injunction against an ordinance, similar to the Ordinance here, that required the hotel employer to pay time and a half for room cleaners who cleaned more than 5000 square feet in a standard workday. *Id.* at *1. The hotel plaintiff in *Woodfin* made the argument, similar to Plaintiffs here, that loss of customer goodwill constituted a threat of irreparable harm. *Id.* at *11. Here, as in *Woodfin*, "Plaintiffs' reliance on *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) to support this proposition is misplaced, because it is a trademark case, and irreparable

---

[2] Plaintiffs submit the Declaration of Damien Hirsch ("Hirsch Decl."), general manager for the JW Marriott Santa Monica Le Merigot, and employee of Plaintiff Columbia Sussex Management, LLC. (Hirsch Decl. ¶ 1, ECF No. 24-2.) To begin, Hirsch's declaration is wholly conclusory, and inadequate to support a likelihood of irreparable injury. *See Am. Passage*, 750 F.2d at 1473. Hirsch simply concludes that the contemplated additional costs will be more than $1 million per year and "the price of a room stay . . . will increase by roughly 5-8%" but provides no support for these figures. (Hirsch Decl. ¶ 8.) What is more, nothing in Hirsch's Declaration supports the notion that customers will no longer stay at Plaintiffs' hotel because Plaintiffs elect to raise room rates.

injury may be presumed from a showing of the likelihood of success on the merits . . . in trademark cases." *Id.* at *11 (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)). Simply put, Plaintiffs have not shown that the harm they claim cannot be adequately compensated at a later time.

Finally, Plaintiffs argue the constitutional violation itself constitutes irreparable harm. (*See* Mot. 5–6.) To the contrary, irreparable injury is not automatically presumed merely because a constitutional violation is alleged. *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011) ("While a First Amendment claim certainly raises the specter of irreparable harm . . . proving the likelihood of such a claim is not enough to satisfy *Winter*.") (internal quotation marks omitted). Such a presumption would be inconsistent with the Supreme Court's requirement for a showing of irreparable harm. *See Winter*, 555 U.S. at 22 (discussing that permitting a preliminary injunction on the "possibility" of irreparable harm was "too lenient"). Instead, a plaintiff must still establish the likelihood of irreparable harm absent a preliminary injunction, as well as the other *Winter* factors. *See DISH Network*, 653 F.3d at 776.

Plaintiffs cite *American Trucking Associations* for the proposition that "a constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm." 559 F.3d at 1058. However, in *American Trucking*, "the damages incurred" constituted extreme economic injury, destruction of the plaintiffs' business or severe disruption "in ways that most likely cannot be compensated with damages alone." *Id.* No comparable injury is alleged here: Plaintiffs assert lost customers and customer goodwill from an anticipated 5–8% increase in cost-of-stay. (Mot. 6; Hirsch Decl. ¶ 8.) Finally, the constitutional violation at issue is clearly not of the type—free speech, association, and privacy—that is of such qualitative importance as to be presumptively irreparable if lost. *See Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (finding gay couples would suffer irreparable injury if their constitutional right to marry were stayed pending appeal). Accordingly, Plaintiffs have not established that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22.

Even under the sliding scale approach, a plaintiff must still show a likelihood of irreparable injury. As Plaintiffs have failed to do so here, Plaintiffs have not established that they are entitled to a preliminary injunction.

**B.     Likelihood of Success on the Merits**

Even had Plaintiffs established a likelihood of irreparable injury, a preliminary injunction is not appropriate because Plaintiffs have not shown a likelihood of success on, or serious questions going to, the merits.

To warrant a preliminary injunction, Plaintiffs must show they are likely to succeed on the merits and meet the other *Winter* factors, or raise serious questions going to the merits and show that the balance of hardships tips sharply in their favor. *All. for the Wild Rockies*, 632 F.3d at 1135. Plaintiffs argue they are likely to succeed on the merits because the Ordinance is (1) preempted by the NLRA; (2) invalid under the DCC; and (3) preempted by CalOSHA. (Mot. 8–19.)

*1.     NLRA Preemption*

The NLRA does not contain an express preemption clause, but the Supreme Court has articulated two preemption principles under the NLRA, one of which is "*Machinists*" preemption. *Am. Hotel and Lodging Assn. v. City of Los Angeles*, 834 F.3d 958, 963 (9th Cir. 2016) ("*AHLA*"); *Associated Builders v. Nunn*, 356 F.3d 979, 987 (9th Cir. 2004) ("*Nunn*"). "*Machinists* preemption prohibits states from imposing restrictions on labor and management's 'weapons of self-help' that were left unregulated in the NLRA because Congress intended for tactical bargaining decisions and conduct 'to be controlled by the free play of economic forces.'" *Nunn*, 356 F.3d at 987 (quoting *Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 140 (1976)); *see also AHLA*, 834 F.3d at 963 (noting "'weapon[s] of self-help,' such as a strike or lock-out").

In contrast, state minimum "benefit protections" such as minimum wages are not subject to *Machinists* preemption "because they do not alter the process of collective bargaining." *AHLA*, 834 F.3d at 964. Thus, "state action that intrudes on

the mechanics of collective bargaining is preempted, but state action that sets the stage for such bargaining is not." *Id.*

Plaintiffs argue that, because unions can waive the Ordinance, the Ordinance and the Waiver provision are subject to *Machinists* preemption because they "improperly tilt the labor-management playing field." (Mot. 9.) The Court disagrees. The Ordinance limits the floor space a Room Attendant may be required to clean in a workday to prevent excessive workloads and allows for collective bargaining as to that limitation. SMMC §§ 4.67.030(a), 4.67.110. The Ordinance "do[es] not regulate the mechanics of labor dispute resolution," but instead "provide[s] the 'backdrop' for negotiations," similar to other state minimum labor standards. *AHLA*, 834 F.3d at 963 (citing *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 757 (1985)); *id.* at 965 (rejecting argument that collective bargaining opt-out provision warranted preemption). Thus, the Workload Limitation is a minimum labor standard and a "valid exercise of states' police power to protect workers." *Id.* at 963 (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21–22 (1987)).

Plaintiffs rely on *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) for the argument that the Workload Limitation "target[s] particular workers in a particular industry" and thus "affect[s] the bargaining process in a way that is incompatible with the general goals of the NLRA." (Mot. 10.) However, following *Bragdon*, the Ninth Circuit has "explained on several occasions that the NLRA does not . . . pre-empt minimum labor standards simply because they are applicable only to particular workers in a particular industry." *Nunn*, 356 F.3d at 990. "It is now clear in this Circuit that state substantive labor standards . . . are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market." *Id.*

Accordingly, the Court finds that Plaintiffs have not established a likelihood of success on the merits, or serious question going to the merits, that the Ordinance is preempted by NLRA under *Machinists* preemption.

9

### 2. Dormant Commerce Clause

Plaintiffs next argue the Ordinance is invalid because it indirectly discriminates against interstate commerce, in violation of the DCC. (Mot. 11–15.)

"The primary purpose of the [DCC] is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'" *Ass'n des Eleveurs de Canards et d'Oies di Quebec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) ("*Canards*") (quoting *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) ("*Optometrists*")). Plaintiffs concede that the Ordinance does not directly "discriminate against interstate commerce on its face," arguing instead that the *indirect* effects inflict a substantial burden. (Mot. 12.) Where a statute regulates evenhandedly but has indirect effects on interstate commerce, the *Pike* balancing test applies. *See Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 451 (9th Cir. 2019) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). An ordinance will be upheld under the *Pike* balancing test where it "effectuates a legitimate local public interest" "unless the burden imposed on interstate commerce is *clearly excessive* in relation to the putative local benefits." *Id.* (quoting *Pike*, 397 U.S. at 142).

"[A] state regulation does not become vulnerable to invalidation under the [DCC] merely because it affects interstate commerce." *Optometrists*, 682 F.3d at 1148 (citing *S. Pac. Co. v. Ariz.*, 325 U.S. 761, 767 (1945)). To the contrary, "there must be a *substantial burden* on *interstate commerce*." *Id.* "The party challenging the regulation . . . must establish that the burdens that the regulation imposes on interstate commerce clearly outweigh the local benefits . . . ." *Rosenblatt*, 940 F.3d at 452.

Plaintiffs contend the Ordinance will require them to pay Room Attendants more or hire more Room Attendants, and that Plaintiffs will pass that increased cost on to their primarily out-of-state clientele. Thus, Plaintiffs contend, the Ordinance substantially burdens interstate commerce because it will cause out-of-state travelers to pay more to stay in Santa Monica hotels. (Mot. 12–13; Reply 8.) However,

Plaintiffs fail to support that any guests have been deterred, how many guests will be deterred, or that the 5–8% cost-of-stay increase Plaintiffs intend to pass on to their customers will prevent customers from traveling to Santa Monica altogether. In short, Plaintiffs fail to show that the increased cost will result in a *substantial burden* on interstate commerce. *See Rosenblatt*, 940 F.3d at 453 (finding plaintiff failed to allege the magnitude of the burden or how any lost fraction of business significantly burdened interstate commerce); *Pac Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994) (finding plaintiff failed to support the extent of the burden on interstate commerce).

Further, as the City points out, the Ninth Circuit in *Rosenblatt* recently recognized that "'only a small number of . . . cases invalidating laws under the [DCC] have involved laws that were genuinely nondiscriminatory' but still imposed a clearly excessive burden on interstate commerce." *Id.* at 452 (quoting *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015)). "These cases address state 'regulation of activities that are inherently national or require a uniform system of regulation'—most typically, interstate transportation" such as interstate trucking or professional sports leagues. *Id.*; *see also Canards*, 729 F.3d at 952. In contrast, the Ordinance regulates local work conditions, protecting hotel employees from excessive workloads. It does not interfere with activity that is inherently national or that requires a uniform system of regulation. As such, Plaintiffs have not shown that the Ordinance substantially burdens interstate commerce.[3]

Accordingly, the Court finds that Plaintiffs have not established a likelihood of success on the merits, or serious questions going to the merits, that the Ordinance is invalid under the DCC.

### 3. CalOSHA Preemption

Lastly, Plaintiffs argue the Ordinance is preempted by CalOSHA because it is a

---

[3] As Plaintiffs have not met their burden to establish that the Ordinance substantially burdens interstate commerce, the Court does not reach the Ordinance's local benefits. *See Canards*, 729 F.3d at 952–53.

health and safety statute, not a labor standards overtime provision, as the City contends. (Mot. 15–19; Opp'n 21.)

CalOSHA, in conjunction with California Labor Code Section 142.3, vests the California Occupational Safety and Health Standards Board (the "Standards Board") with the sole authority to adopt occupational safety and health standards. (Mot. 17.) In *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893 (1993), the California Supreme Court set out the standard for state preemption of a local ordinance as follows:

> Under . . . the California Constitution, a county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws. If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void. A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication. Local legislation is 'duplicative' of general law when it is coextensive therewith. Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area or when it has impliedly done so . . . .

*Id.* at 897–98 (internal quotation marks and citations omitted).

Plaintiffs argue that the Legislature intended the Standards Board's decisions to fully-occupy the field and so the Workload Limitation, as an occupational health and safety provision, must be preempted. (Mot. 16–17.) Alternatively, Plaintiffs argue that the Workload Limitation concerns excessive work rate, which the Standards Board regulates through the requirement to maintain a musculoskeletal injury prevention program ("MIPP"), thus impliedly preempting the Ordinance. (Mot. 17–18.) The City responds that the Workload Limitation is a compensation provision, not an occupational health and safety provision, because it requires additional compensation for additional work. (Opp'n 21–25.) The City notes that Plaintiffs cite no California workplace health and safety standard that permits an employer to

impose unsafe working conditions on employees so long as they are paid more. (Opp'n 21.)

The City points to other courts that have considered and rejected Plaintiffs' arguments under similar facts. (Opp'n 21 (citing *Cal. Hotels & Lodging Ass'n v. City of Oakland*, 393 F. Supp. 3d 817 (N.D. Cal. 2019) ("*CHLA*"); *Woodfin*, 2006 WL 2739309, at *18).). In *CHLA*, the court considered an Oakland ordinance, similar to the Ordinance here, that imposed maximum workload requirements for hotel workers and required additional payment when employees cleaned more than a specified square footage ("Room Cleaner Provision"). *Id.* at 821. The court in *CHLA* rejected the very arguments Plaintiffs put forward here. *Compare CHLA*, 393 F. Supp. 3d at 824–27 *with* (Mot. 16–20). The court found no field preemption because "[b]oth CalOSHA and the Labor Code explicitly leave room for local control of aspects of employment unrelated to safety and health." *CHLA*, 393 F. Supp. at 826. The Court also found the Room Cleaner Provision was an overtime provision addressing compensation, not an occupational health and safety provision designed to prevent injuries like the MIPP, which does not address compensation. *Id.* at 826–27.

The Court finds the reasoning in *CHLA* persuasive. First, CalOSHA leaves room for additional local action in regulating places of employment unrelated to safety and health, so there is no field preemption. *Id.* at 826 (citing *T-Mobile W. v. San Francisco*, 6 Cal. 5th 1107, 1122 (2019)). Second, the Ordinance here concerns compensation for work done, requiring additional compensation for additional square feet cleaned; it says nothing regarding potential injuries or injury risks. *See* SMMC § 4.67.030(a). In contrast, MIPP concerns preventing musculoskeletal injuries and disorders, addresses the nature of potential injuries, and requires evaluations of physical injury risks. *CHLA*, 393 F. Supp. at 826 (quoting 8 Cal. Code. Regs. § 3345). It says nothing regarding compensation. As in *CHLA*, "[t]hese differences are not . . . distinctions without a difference." *Id.*

Accordingly, the Court finds that Plaintiffs have not established a likelihood of success on the merits, or serious question going to the merits, that the Ordinance is preempted by CalOSHA.

## VI. CONCLUSION

Plaintiffs have not established that there is a likelihood of irreparable harm in the absence of a preliminary injunction, or that they are likely to succeed on the merits. Nor have they raised serious questions going to the merits. Accordingly, the Court need not reach the balance of hardships or the public interest.[4] *See All. for the Wild Rockies*, 632 F.3d at 1135 ("'[S]erious questions going to the merits' *and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.") (emphasis added). Accordingly, the Court finds that Plaintiffs have not satisfied the difficult task to establish that they are entitled to the extraordinary remedy of a preliminary injunction.

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for a preliminary injunction. (ECF No. 24.)

**IT IS SO ORDERED.**

December 18, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[4] Plaintiffs do not address the public interest factor in their moving papers and expressly consider it for the first time in reply. (*See generally* Mot.; Opp'n 11; Reply 3–4.) Generally, courts decline to consider arguments raised for the first time in reply. *See, e.g.*, *FT Travel-New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (refusing to consider argument raised for first time in reply). Accordingly, even were the Court to reach the issue, the Court declines to consider Plaintiffs' argument as to the public interest.