# EXHIBIT A

# EXHIBIT A

1    STOKES WAGNER ALC
     PETER B. MARETZ, SBN 144826
2    pmaretz@stokeswagner.com
     600 West Broadway, Suite 910
3    San Diego, CA 92101
     Telephone:   (619) 232-4261
4    Facsimile:   (619) 232-4840

5    STOKES WAGNER ALC
     DIANA LERMA, SBN 258442
6    dlerma@stokeswagner.com
     555 West 5th Street, 35th Floor
7    Los Angeles, CA 90013
     Telephone:   (213) 618-4128
8    Facsimile:   (619) 232-4840

9    SPECTOR GADON ROSEN VINCI P.C.
     George M. Vinci, Jr. (admitted *pro hac vice*)
10   gvinci@sgrvlaw.com
     NEAL R. TROUM (admitted *pro hac vice*)
11   ntroum@sgrvlaw.com
     1635 Market Street, 7th Floor
12   Philadelphia, PA 19103
     Telephone:   (215) 241-8840
13   Facsimile:   (215) 531-9128

14   Attorneys for Plaintiffs COLUMBIA
     SUSSEX MANAGEMENT, LLC, and CW
15   HOTEL LIMITED PARTNERSHIP

16            UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18

19   COLUMBIA SUSSEX                    Case No. 2:19-cv-09991 ODW (SKx)
     MANAGEMENT, LLC,
20   and                               **PLAINTIFFS COLUMBIA**
     CW HOTEL LIMITED                   **SUSSEX MANAGEMENT, LLC**
21   PARTNERSHIP,                       **AND CW HOTEL LIMITED**
     individually and on behalf of all other   **PARTNERSHIP'S SURREPLY**
22   hotel owners and managers operating   **MEMORANDUM OF POINTS**
     hotels in Santa Monica, California,   **AND AUTHORITIES IN**
23                                       **OPPOSITION TO MOTION TO**
                         Plaintiffs,    **DISMISS SECOND AMENDED**
24                                       **COMPLAINT**
              vs.
25
     CITY OF SANTA MONICA,
26
                         Defendant.
27

28
     _____
          PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
                   MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# **<u>TABLE OF CONTENTS</u>**

2  I.      Argument .................................................................................. 1

3          A.      The Ordinance Is Subject To Machinists Preemption Because of
4                  Its Direct Impact In Favor Of Unionizing, As Alleged In The
                   Second Amended Complaint, Which Allegations Must Be
5                  Accepted As True For Purposes Of The City's Motion To Dismiss ... 1

6          B.      The Ordinance Is Subject to CalOSHA Preemption .......................... 6

7          C.      Plaintiffs Have a Valid Claim For Declaratory Relief ...................... 7

8  II.     Conclusion ............................................................................... 9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Chamber of Commerce v. Brown*, 554 U.S. 60 (2008)..........................................2, 3

*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987)...................................2

*Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986) ..........................2

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) .............................................................1

*Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment
Relations Comm'n*, 427 U.S. 132 (1976) ...............................................2, 3, 6

*Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014).......................7

*Metropolitan Life Insur. Co. v. Massachusetts*, 471 U.S. 724 (1985).....................2

*Rhode Island Hospitality Ass'n v. City of Providence*,
667 F.3d 17 (1st Cir. 2011) ...........................................................1, 2, 3

**Statutes and Rules**

Fed.R.Civ.P. 12(b)(6) ....................................................................................1, 6, 7

SMCC §4.67.030.................................................................................................8, 9

PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

## SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES

I.  **Argument**

    A.    **The Ordinance Is Subject To *Machinists* Preemption Because Of Its Direct Impact In Favor Of Unionizing, As Alleged In The Second Amended Complaint, Which Allegations Must Be Accepted As True For Purposes Of The City's Motion To Dismiss.**

The City ignores the well pleaded facts in the SAC when it claims that the Ordinance is "union neutral" (Reply p.5).  As shown in Plaintiffs' Opposition and further below, the well pleaded facts in the SAC, which this Court must accept as true on the City's Motion to Dismiss, tell a different story.

The linchpin of the City's argument against *Machinists* preemption, and its fatal flaw, is stated in its Reply at p.7n.4:

> "…whether the pressure to unionize presented by a waiver provision results in Machinists preemption is a question of law for the court, rendering irrelevant Plaintiffs' conclusory allegation (SAC ¶54) that in this case that pressure is 'direct' rather than 'indirect.'"

The City's is wrong as a matter of law, as well as fact.

Indeed, the City's argument is mystifying, since it has admitted that "[p]reemption 'evaluates what legislation ***does*** . . . .'" (MTD Memo. at 16 (emphasis in original).)  Indeed, the Supreme Court has made clear that "[p]reemption analysis … turns on the actual content of [the] policy ***and its real effect*** on federal rights." *Livadas v. Bradshaw*, 512 U.S. 107, 119 (1994) (emphasis added).  What the Ordinance ***does***, and its on-the-ground *real effect*, are issues of fact that cannot be decided on this Rule 12(b)(6) motion to dismiss.

Santa Monica's citation to *Rhode Island Hospitality Ass'n v. City of Providence*, 667 F.3d 17 (1st Cir. 2011) (newly cited at Reply p.6n.3), is particularly ironic, because that case highlights the importance of facts.  Indeed, it was decided on stipulated facts. *Id.*, at 25.  *Rhode Island Hospitality* was a pre-enforcement action

seeking to declare a city ordinance unenforceable, in part based on *Machinist's* preemption.  The ordinance there simply required an entity that took over ownership of a hotel or similar business to continue to employ the employees that worked for the prior owner for a period of three months, though there were certain exceptions that made the requirement even less onerous.[1]

Against the argument that the NLRB might use that temporary retention requirement to invoke the NLRB Successorship Doctrine to require the new owners to recognize and bargain with a previously existing union at the facility, the court expressed doubt this would happen and, more to the point, observed that it had *not yet* happened; and the mere risk that it might was not a sufficient burden to justify pre-emption. 667 F.3d at 29-31.   More relevant here, moreover, the court observed that if the NLRB were to take such action, plaintiffs could then bring an action based on the new facts. *Id.*, at 31.  And throughout its opinion, the court stressed the limited nature of the restrictions imposed.  As the concurring judge concluded, "in the final accounting, I believe that the Ordinance has at most a minimal impact on the collective bargaining process and is thus more comparable to the regulations upheld in *Metropolitan Life* and *Fort Halifax* than those struck down in *Machinists, Golden State*, and *Brown.*" *Id.*, at 45.

Also instructive was the First Circuit's consistent efforts to contrast the ordinance there with the California statute struck down in *Chamber of Commerce v. Brown*, 554 U.S. 60 (2008).  The ordinance in *Brown* prohibited businesses from using state-provided funds to "assist, promote, or deter union organizing."  Although facially neutral, the statute included certain exemptions for union-related activities that effectively tilted the scales in favor of unionizing. *Id.*, at 63.  Equally disturbing,

---

[1]  The ordinance was thus more like the three-month severance requirement upheld in *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987), than the far more onerous ordinance here.

the statute imposed a "formidable enforcement scheme" to ensure compliance (*id.*, at 63-64), so that "even a trivial violation … could give rise to a substantial liability." *Id.*, at 72.[2]

Thus, the law is clear that, as Santa Monica first admitted and contrary to what it said in its Reply, the facts alleged by Plaintiffs are not "irrelevant": *Machinists* preemption cannot be determined without a consideration of the actual real-world *effects* of the Ordinance as it is implemented.  And those real-world effects make clear that both the Ordinance's *intent*, and its actual *impact*, is to impermissibly tilt the balance in favor of unionizing.  That is because, as alleged in the SAC and as this Court must accept as true for purposes of the City's Motion to Dismiss, the union *always* waives the onerous requirements of this Ordinance.  The result is that the Ordinance does not serve to protect workers from being overworked.  It is simply a tax imposed on hotels that do not wish to unionize.

Contrary to the City (Reply, p.7n.4), the allegations of SAC ¶54 are not "conclusory"—and particularly not in light of the other paragraphs in that pleading. For example, paragraphs 23, and 53–57 allege the following:

> "23. On information, knowledge, and reasonable belief, the passage of Chapter 4.67 in general and the Ordinance in particular was

---

[2] The *Brown* court explained the enforcement scheme as follows:

> "AB 1889 authorizes not only the California attorney general but also any private taxpayer—including, of course, a union in a dispute with an employer—to bring a civil action against suspected violators for "injunctive relief, damages, civil penalties, and other appropriate equitable relief." § 16645.8. Violators are liable to the State for three times the amount of state funds deemed spent on union organizing. §§ 16645.2(d), 16645.7(d), 16645.8(a). Prevailing plaintiffs, and certain prevailing taxpayer intervenors, are entitled to recover attorney's fees and costs, § 16645.8(d), which may well dwarf the treble damages award. … Finally, even if an employer were confident that it had satisfied the recordkeeping and segregation requirements, it would still bear the costs of defending itself against unions in court, as well as the risk of a mistaken adverse finding by the factfinder."

554 U.S. at 72.  This is disturbingly similar to the penalties available under the ordinance at issue here. (*E.g.*, SM Code 4.67.120.)

3

prompted by the union that is the predominant collective bargaining representative of union-based hotels in Santa Monica, in a direct effort to: (a) force an increase in union membership (and a concomitant increase in dues paid) by forcing hotels to hire additional room attendants to meet the demands of the square-footage restrictions; and (b) use the unilateral waiver provision it was provided to force non-union hotels to accept collective bargaining representation and to interfere with the procedural aspects of the collective bargaining process by forcing concessions which would otherwise not be considered.  SM Code § 4.67.110 provides that the Ordinance "may be waived pursuant to a bona fide collective bargaining agreement."    Thus, Santa Monica has declared that a room attendant at the Le Merigot who cleans more than 3,500 square feet is entitled to double pay for the day *unless the union decrees otherwise*.  Unions thus have an effective veto over whether the Ordinance will apply to Santa Monica hotels, which will have the effect of giving unions an additional, unnecessary, and politically-based advantage in their attempts to unionize employees in Santa Monica hotels and their negotiations with Santa Monica hotels after unionization.

53. Further, and importantly, on information and belief, *every hotel in Santa Monica that has a collective bargaining agreement in place with Local 11 has been given a waiver from the Ordinance*. That is, the union that backed the Ordinance as a matter of course gives those hotels who have agreed to CBAs a waiver of the Ordinance and its room attendant square footage limitation.  This is consistent with what is believed to have transpired in Longbeach and Emeryville, which passed similar local laws, where the union also gave waivers of the applicable room attendant square footage limitations to all hotels with CBAs with the union.   Indeed, tellingly, some of the CBAs entered into by the union and hotels in these localities contain language providing for an automatic waiver when laws such as Santa Monica's Ordinance go into effect.  *Thus, it is really only hotels without CBAs like the Le Merigot that must comply with the Ordinance and incur the associated increase in costs*.

54. The intent and effect of a law like the Ordinance is clear – enter into a CBA with Local 11 or effectively pay a $1 million fine.  Put differently, the Ordinance does not de jure affect union and non-

union hotels similarly, it instead directly pressures hotels without collective bargaining agreements to enter a CBA or (unlike hotels with CBAs and waivers) comply with the Ordinance.

55. While some hotels have CBAs with Local 11 that contemplate room attendants cleaning fewer than 15 rooms per workday, it is not believed that Local 11 has entered into a CBA with any hotel with a room attendant workload as few as 8 or 9 rooms (which is all the Le Merigot's room attendants are now permitted to clean on average under the Ordinance). Nor is it believed that any Local 11 hotel CBA limits room attendants' workloads by means of a square footage limitation; rather, a room credit system appears universal.

56. Thus, the intention of the Ordinance is not to ensure that hotel room attendants only clean a certain amount of room space; that is, protecting hotel employees from excessive workloads. The union's own training programs, its own CBAs with hotel after hotel, and its policy of providing blanket waivers to all hotels with CBAs demonstrate that the Ordinance has nothing to do with protecting hotel employees from excessive workloads. To the contrary, the Ordinance provides a political source of significant economic pressure for hotels to enter into CBAs with Local 11 to avoid the Ordinance's unrealistic and unnecessary workload limitations. The Ordinance thus tips the scales in Santa Monica union-hotel negotiations decidedly and unfairly in favor of the union by imposing an unconscionable economic and competitive burden on Santa Monica hotels that can only be avoided by bargaining with a union, disrupting the equitable bargaining process.

57. This is consistent with the fact that Santa Monica engaged in no study or analysis whatsoever to determine that room attendants at hotels such as the Le Merigot should only be required to clean 3,500 square feet a day. Instead, Santa Monica merely looked at the floor space limitations for room attendants in effect in some other cities and picked a similar (but lower) number. There is thus no evidence that Santa Monica, in enacting the Ordinance, determined that room attendants were being overworked and in need of its square foot cleaning limitations in the first place." (Bold-faced italics in original; italics only added.)

/ / /

PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

These facts alleged in the SAC, which this Court must accept as true, make clear that the Ordinance is "directed toward" and has the *effect* of materially "altering the bargaining positions of employers or unions"—which the law prohibits. *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 156 (1976) (POWELL, J., Concurring).

Under the lenient standard of Fed.R.Civ.P. 12(b)(6), the SAC therefore states a valid claim for *Machinists* preemption, and Santa Monica's Motion must be denied.

**B.    The Ordinance Is Subject To CalOSHA Preemption.**

The City's contention that the Ordinance is an overtime provision (Reply, p.2) is at odds with the well-pleaded factual allegations of the SAC.  Plaintiffs have alleged that the effect of the Ordinance is not to award cleaners additional pay, but rather, to limit their workloads.  Either a hotel is unionized, in which case the local hospitality workers' union grants waivers as a matter of course (SAC ¶53), or the hotel is not unionized and it must hire additional workers to accommodate the workload restriction. (SAC ¶¶ 29-30: "…Le Merigot has had to hire (and pay) additional room attendants… [and] will have roughly $1 million per year in additional room attendant labor costs as it doubles the size of its room attendant staff.")  In neither case is any cleaner receiving overtime pay, which is why room attendants sent dozens upon dozens of letters to the City opposing the Ordinance's square footage limitations. (SAC ¶49.)  As with *Machinists'* preemption, the effect of the Ordinance is what matters.  Since its effect is a fact that the City cannot dispute at this procedural stage of the case, there can be no question that the Ordinance imposes an occupational health and safety standard, and that Plaintiff has properly stated a CalOSHA preemption claim.

While Plaintiffs' chief contention regarding CalOSHA remains that the Ordinance is preempted because it imposes an occupational health and safety standard, the motion should also be denied because the Ordinance at least partially

occupies this field and unduly burdens transient citizens. (*See* SAC ¶39, addressing preemption where state law partially covers a subject and the adverse effect of an ordinance on transient citizens outweighs the possible municipal benefit.)  There is no room at this juncture for Defendant to dispute the allegation that transient citizens will pay higher prices for Santa Monica hotel stays. (SAC ¶ 41.)

Nevertheless, Defendant cites *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (newly cited at Reply p.5n.2), for the proposition that Plaintiffs abandoned this argument.  But Defendant had only raised the issue in passing. Defendant argued that Plaintiffs had failed to make a "showing" that any alleged adverse impact on transient citizens outweighs the benefit of the ordinance to the locality (MTD at 12).  On a Rule 12(b)(6) motion to dismiss—and unlike in Mariscal, a summary judgment case—no evidentiary "showing" was required, and the point merited no discussion.  In any event, Plaintiffs did point out the effect on transient guests, noting that the Ordinance was increasing costs that would have to be passed on. See MTD Opp. at 15. ("This has cost Plaintiffs roughly $1 million per year in additional room attendant labor costs, contributing to an increase in the price that the Le Merigot guests pay… the Le Merigot and other Santa Monica hotels pass along the cost imposed by the Ordinance to their customers.")

Since the well-pleaded factual allegations of the SAC preclude a determination that the Ordinance is an overtime provision or that the benefits to the locality outweigh the burdens imposed on transient citizens, the Court should not dismiss Plaintiffs' CalOSHA preemption claim.

## C.   Plaintiffs Have A Valid Claim For Declaratory Relief.

The City's argument that Plaintiffs have failed to allege a justiciable controversy sufficient for declaratory relief was indeed absurd in the face of the allegations of SAC ¶¶ 59-61 and 65-69, and the City's own insistence on an interpretation of the Ordinance diametrically opposite to that proposed by Plaintiffs.

PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

To be more specific, SAC ¶¶ 59 & 60 allege in part:

> 59. the Ordinance is silent as to whether a room attendant at the Le Merigot who cleans 3,499 square feet of rooms a day can also work in the laundry for an hour, for example, or clean a hallway, without the hotel having to pay the worker twice the normal rate of pay.

> 60. While Plaintiffs believe that such additional work is permitted by the express terms of the Ordinance, Santa Monica and the Ordinance's union backers take a contrary view – namely, that a Santa Monica room attendant who cleans 3,499 square feet of rooms at the Le Merigot cannot do any other work without receiving twice regular pay for the entire workday."

In its Motion (pp. 24-25), the City confirms the *existing* conflict in interpretation of Ordinance section 4.67.030(b), stating (incorrectly) that if a room attendant were to clean 3,500 square feet in four hours and wash laundry for another four "this would directly violate the workload proration provision" of the ordinance.

Because the Ordinance has gone into effect and Plaintiffs must currently operate under its strictures, and because of the draconian penalties for non-compliance, this controversy is not "hypothetical" or "potential", as in the cases cited by the City, but presently existing and substantial, and thus justiciable. *See also*, SAC ¶¶ 66-69.

Furthermore, the Ordinance is not as clear as the City asserts, and hardly supports the City's interpretation. Ordinance section 4.67.030(b) provides:

> "**Workload proration**.  The maximum floor space set forth in subsection (a) shall be reduced on a prorated basis if a room attendant works less than eight hours in workday, shall be increased on a prorated basis for each hour of overtime that a room attendant works in excess of eight hours in a workday, and shall be calculated on a prorated basis by room if a room attendant is assigned to clean rooms jointly with one or more other room attendants."

Far from being "clear", the final clause of this provision is incomprehensible.

/ / /

Equally important, the provision only refers to the number of hours in a day that the room attendant "works"; it does not refer to the number of hours he or she works "as a room attendant" or "cleaning rooms."  Thus, and contrary to the City's position, there is nothing in this language to prohibit a room attendant from being assigned other duties during his or her eight hour shift after completing their allocated 3,500 square feet.  The plain meaning of the provision is that as long as the worker works eight hours, the maximum square-footage that can be cleaned in a hotel like Le Merigot is 3,500.

Accordingly, and in view of the draconian penalties for any violation of the Ordinance, the Court should uphold and entertain the claim for declaratory relief, and grant the declaration that Plaintiffs are requesting.

## II.   **Conclusion**

For the reasons previously stated and further set forth herein, the motion to dismiss of Defendant Santa Monica should be denied.


DATED:  May 13, 2020            STOKES WAGNER ALC

                                By: /s/ Peter B. Maretz
                                PETER B. MARETZ
                                Attorneys for Plaintiffs COLUMBIA
                                SUSSEX MANAGEMENT, LLC, and CW
                                HOTEL LIMITED PARTNERSHIP

PLAINTIFFS' SURREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT